UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| James Guzman, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| Vs. | § | CIVIL ACTION NO. H-04-1915 |
| | § | |
| Harold Stoudt, Jr., *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a civil rights case brought pursuant to 42 U.S.C. § 1983. Plaintiff James Guzman claims that Defendants Harold R. Stoudt, Jr., Willie R. Hill, and James C. Davis deprived him of a constitutional right while acting under color of state law. Defendants have moved for summary judgment on the grounds of Eleventh Amendment and qualified immunity, failure to exhaust administrative remedies, and failure to support the allegations underlying the § 1983 claim. After considering the parties' filings and the applicable law, the Court finds that Defendants' motion for summary judgment, Docket No. 21, should be and hereby is **GRANTED** as to Guzman's claims against all Defendants in their official capacities and as to Guzman's demand for an injunction directing Defendants to issue an OJT certificate to Guzman for the Microcomputer Specialist program. Defendants' motion is **DENIED** as to Guzman's claims against Defendants Hill and Stoudt in their individual capacities. Guzman's claim against Defendant Davis in his individual capacity is **DISMISSED** without prejudice for failure to exhaust administrative remedies.

## I. BACKGROUND

Guzman is an inmate of the Wynne prison in Huntsville, Texas, which is administered by the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID). Defendants Hill and Stoudt are TDCJ-CID employees who supervise facilities where prisoners work. Defendant Davis is an employee of the Windham School, which offers Offender On-the-Job Training (OJT) programs through the Diversified Career Preparation (DCP) Program at the Wynne Unit. OJT programs allow inmates to gain employable skills and job certification by accumulating credit for courses and work completed over a period of six months. Inmates satisfy the work components of OJT programs by working in prison facilities, including those supervised by Hill and Stoudt.

On August 6, 2002, Guzman enrolled in the Microcomputer Specialist OJT program. He participated in that program until January 27, 2003, when he was transferred to the Warehouseman OJT program. While he was enrolled in these programs, he was supervised by Hill and Stoudt. According to Guzman, he was assured by Stoudt that the transfer from the Microcomputer program to the Warehouseman program would not result in a loss of credit, because Guzman had been working as a warehouseman since August 6, 2002 and his participation in the Warehouseman program could therefore be back-dated to that date.

Guzman claims that, in February 2003, he began to complain to prison supervisors that Hill and Stoudt were violating prison rules by allowing prisoners to handle contraband and requiring prisoners to do work assigned to Hill and Stoudt. (Compl. at 2.) According to Guzman, Hill and Stoudt responded by retaliating against

and harassing him. (*Id.*) Guzman claims that he complained to prison supervisors about the retaliation and harassment on March 12, 2003. (*Id.*) That same day, Guzman was both dropped from the Warehouseman OJT program and administratively charged with possession of contraband. The contraband was later found to belong to another inmate, and the charge against Guzman was abandoned.

Two days later, on March 14, 2003, Guzman was terminated from the DCP Program altogether, on the ground that he no longer had a job and therefore was no longer eligible for the program. Guzman never received an OJT certificate for either the Microcomputer Specialist or the Warehouseman program. He claims that he is entitled to certificates for both programs and that Davis improperly dropped him from the DCP Program at the behest of Hill and Stoudt. He further alleges that the contraband charge was fabricated by Hill and Stoudt for the purpose of retaliation. He seeks injunctive relief and monetary damages.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001) (internal quotation marks and citation omitted). A genuine issue of material fact exists "if the evidence is such that a

reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id*.

### B. Eleventh Amendment Immunity

Guzman asserts § 1983 claims against Defendants in both their official and their individual capacities. (*See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 1.) A suit against a state employee in his official capacity is a suit against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment prohibits individuals from filing suit in federal court against a state that has not waived its sovereign immunity. U.S. CONST. amend. XI. As the Fifth Circuit has repeatedly stated, Texas has not waived its sovereign immunity against prisoner suits. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("We twice have held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.").

Guzman points out, however, that his Complaint seeks injunctive relief—namely, the issuance of injunctions requiring Defendants to issue OJT completion certificates to Guzman—in addition to monetary damages. (Pl.'s Resp. at 1; *see also* Compl. at 7.) As Defendants concede, the Supreme Court has recognized an exception to Eleventh Amendment sovereign immunity: under limited circumstances, courts may issue injunctions governing state officials' future conduct. (*See* Defs.' Mot. for Summ. J. at 13; *Ex Parte Young*, 209 U.S. 123, 158-59 (1908).) The injunctions that Guzman seeks are not, however, of the type contemplated by *Young*, which stands for the proposition that "a federal court, consistent with the Eleventh Amendment, may enjoin state officials

*to conform their future conduct to the requirements of federal law.*" *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (emphasis added); *see also McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004). No federal law requires TDCJ-CID to issue completion certificates to Guzman. Therefore, Guzman's claims against Defendants in their official capacities do not fall within the narrow exception to sovereign immunity and are barred by the Eleventh Amendment.

### C. Qualified Immunity

Guzman also brings claims against Defendants in their individual capacities. (*See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 1.) Defendants argue that they are entitled to qualified immunity from these claims. (Defs.' Mot. for Summ. J. at 14.)

> A state official exercising discretionary authority whose conduct deprives another of a right secured by federal constitutional or statutory law is nonetheless shielded from personal liability for damages under Section 1983 by the doctrine of qualified immunity, unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded.

*Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000) (internal quotation marks omitted).

Qualified immunity is an affirmative defense that must be pleaded by a defendant. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). Defendants here pleaded the qualified immunity defense in their Answer. (Ans. at 3, ¶ 15.) "Once a defendant pleads a defense of qualified immunity, on summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Siegert*, 500 U.S. at 231 (internal quotation marks and brackets omitted). Thus, the Court must inquire first whether the constitutional right asserted was clearly established at the time of the alleged violation.

The right asserted here is that of free speech. Guzman alleges that Defendants retaliated against him for speaking out against rule violations and abuse of authority by prison officials. The Fifth Circuit has long held that "prison officials [are] prohibited from retaliation against inmates who complain of prison conditions or official misconduct." *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986). Therefore, Guzman has alleged the violation of a clearly established right.

The second prong of the qualified immunity test requires the Court to ascertain whether reasonable officials in Defendants' position would have thought their actions constitutional. *See Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir. 1992). Once a defendant asserts the qualified immunity defense, the burden shifts to the plaintiff to rebut it. *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003). Defendants contend that Guzman cannot do so.

Because the right asserted was well-established at the time of the alleged violation, that violation was objectively reasonable only if it was the result of a mistake of fact—in other words, only if Defendants could reasonably have believed that their actions did not infringe Guzman's unarguable free speech right. Guzman claims that Defendants retaliated against him for speaking out against their misconduct. No reasonable person would believe that such retaliation did not infringe the right to free speech. Therefore, Defendants are not entitled to qualified immunity from claims brought against them in their individual capacities.

### D.     Failure to Exhaust Administrative Remedies as to Defendant Davis

Davis argues that Guzman's claim against him must be dismissed for failure to exhaust administrative remedies, as required by § 1997(e)(a) of the Prison Litigation

Reform Act (PLRA), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (1996). As Davis notes, the Supreme Court has held that the PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Fifth Circuit has held that "a *pro se* complaint should [not] be dismissed on its face by a technical reading of the available administrative procedures when [the] plaintiff has made detailed allegations showing a substantial effort to obtain an administrative remedy." *Holloway v. Gunnell*, 685 F.2d 150, 154 (5th Cir. 1982). Instead, "the defendants should be required to answer and make an appropriate motion," which should identify any remedy that the plaintiff has failed to exhaust. *Id.* at 155. Here, Davis has answered and has identified a specific remedy of which Guzman is aware and that he has failed to exhaust as to his claim against Davis: namely, the Step 1 and Step 2 internal grievance process.

Moreover, although "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued," a prisoner must adhere to the grievance process sufficiently to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). "[F]or many types of problems[,] this will often require, as a practical matter, that the

prisoner's grievance identify individuals who are connected with the problem." *Id.* Guzman's Step 1 and Step 2 grievances did not identify Davis as one of the officials involved in the alleged misconduct and did not complain of wrongful termination from the DCP Program. Therefore, they did not provide Davis with meaningful notice of and opportunity to correct the alleged problem. This failure to exhaust available administrative remedies deprives the Court of subject matter jurisdiction under the PLRA over Guzman's claim against Davis. That claim must therefore be dismissed without prejudice.

### E.     The Merits of the Retaliation Claims

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Defendants contend that Guzman has failed to satisfy any of the four requirements. The Court therefore examines each in turn.

#### 1.     Specific constitutional right.

"[I]f the inmate is unable to point to a specific constitutional right that has been violated, [his § 1983 retaliation] claim will fail." *Id.* at 325. According to the Fifth Circuit, however, "[p]ro se prisoner complaints must be read in a liberal fashion and should not be dismissed unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief." *Parker v. Carpenter*, 978 F.2d 190, 192 (5th Cir. 1992); *see also Haines v. Kerner*, 404 U.S. 519, 596 (1972) (holding *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers").

Defendants are correct in stating that Guzman, as an inmate, has no constitutional or statutory right to participate in training or rehabilitative programs. (Defs.' Mot. for Summ. J. at 7; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).) As noted in Part II.C of this Memorandum and Order, however, Guzman does possess a constitutional right to free speech. He alleges that Defendants retaliated against him for exercising that right. "[P]rison officials [are] prohibited from retaliation against inmates who complain of prison conditions or official misconduct." *Gibbs*, 779 F.2d at 1046. To establish a § 1983 claim based upon such retaliation, Guzman must demonstrate not only that he had a generic right to the type of speech in which he engaged, but that he exercised that right in a manner consistent with his status as a prisoner. *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004).

In *Adams v. Gunnell*, the Fifth Circuit held that prisoners could not state a retaliation claim based upon the right to free speech against prison administrators who disciplined them for circulating a petition. 729 F.2d 362, 367-68 (5th Cir. 1984). The *Adams* court reasoned that the administrators had penalized the prisoners not for expressing their grievances but for refusing to follow the internal procedures provided by the prison for doing so while maintaining order within the prison. *Id.* Here, in contrast, Guzman complied with the internal grievance procedure regarding his complaints against Hill and Stoudt; indeed, his initial oral complaint and subsequent Step 1 and Step 2 grievance forms are alleged to be the motivation for their retaliation against him. Therefore, Guzman has pointed to a specific constitutional right exercised in an appropriate manner and has thereby satisfied the first prong of the retaliation standard.

### 2. Intent to retaliate.

"The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)). Guzman has alleged a chronology of events that could provide support for a finding of retaliation. He claims that he was falsely charged with possession of contraband and terminated from the Warehouseman training program on the very same day that he complained of official misconduct, and by the very same officials about whom he complained. If true, this sequence of events could plausibly give rise to an inference of retaliation. Thus, Guzman has satisfied the second prong of the § 1983 standard.

### 3. Retaliatory adverse act.

Defendants do not challenge this element of Guzman's claim. It is undisputed that Guzman suffered an adverse act; namely, his termination from the OJT and DCP programs. While it remains to be seen whether Guzman can prove at trial that this adverse act was motivated by a desire to retaliate for Guzman's protected speech, he has sufficiently pled and supported this element of his § 1983 claim to survive summary judgment.

### 4. Causation.

Defendants argue that Guzman cannot establish causation by demonstrating that, but for the alleged retaliation, he would have received an OJT certificate. They point out that OJT policy allows a prisoner to enroll in only one OJT program at a time. Because Guzman concededly participated in OJT programs only from August 6, 2002 to March

12, 2003, and because every OJT program takes six months to complete, Defendants are correct in stating that Guzman could under no circumstances be entitled to two OJT certificates. (*See* Ex. A to Defs.' Mot. for Summ. J. at 7.)

Guzman may, however, be entitled to the Warehouseman OJT certificate or compensation for its loss. If it is true that Hill and Stoudt falsely and maliciously assured Guzman that he would receive credit in the Warehouseman program for work completed through the Microcomputer Specialist program, and if Guzman relied upon those representations in requesting a transfer from one program to the other, then his resulting loss of credits and failure to receive the certification is a direct result of Hill's and Stoudt's retaliatory actions.

In addition, as Guzman points out in his Response to the motion for summary judgment, it is difficult to fathom why he would have asked to be transferred out of the Microcomputer Specialist OJT program only ten days before he was scheduled to complete that program, unless he believed that he would receive credit in his new program for the time he had already invested in training. (*See* Pl.'s Resp. at 2.) The Court, therefore, finds that Guzman has sufficiently alleged and supported the causation element of his § 1983 retaliation claim. Because his claim satisfies all four elements of the § 1983 standard, summary judgment in favor of Defendants Hill and Stoudt in their individual capacities is not appropriate at this time.

**CONCLUSION**

Defendants' motion for summary judgment, Docket No. 21, is **GRANTED** as to Guzman's claims against all Defendants in their official capacities and as to Guzman's request for an injunction directing Defendants to issue to Guzman an OJT certificate for

the Microcomputer Specialist program. Defendants' motion is **DENIED** as to Guzman's retaliation claim against Defendants Hill and Stoudt in their individual capacities. Guzman's retaliation claim against Defendant Davis in his individual capacity is **DISMISSED** without prejudice for failure to exhaust administrative remedies.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 28th day of September, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**